Good morning, Your Honors. May it please the Court, my name is David Stein and I represent Ms. Jeanne Edwards, who is the plaintiff and the appellant. I'd like to reserve six minutes for rebuttal. Ms. Edwards is appealing the district court's ruling that neither of her California consumer protection claims was suitable for class certification. Both of those claims are based on the same basic facts, that Ford discovered a defect in one of its mass-produced automobiles. What is the defect here? Your Honor, the defect in this case is the computer in the Ford Freestyle that's responsible for maintaining stable idle speed becomes confused when there's buildup of routine engine sludge. It thinks the vehicle's about to stall and it overreacts by sending engine speed way up and causing a surge instead. The problem with the computer. Primarily, Your Honor, it does seem to be the computer, the way the computer is calibrated. It seems like there's so many individualized, I mean, for example, you refer to a buildup of sludge, so let's say we all bought one of these Ford Freestyles, you never got your car serviced. That would lead, theoretically then, would lead you to experience more surging or more severe surging than I, who religiously get my car serviced all the time, correct? No, I'd have to disagree respectfully, Your Honor. I'm not sure that part of routine service is to remove sludge. In fact, the service bulletin in this case, which is a repair recommendation by Ford to its dealers that's beyond what is normal, recommends that when people bring their car in for this problem, that at that point the sludge be cleaned off and that the computer be recalibrated. Can I ask you a different question? After the ruling by the district court, the company initiated a program to notify all the members of the putative class about the defect and agreed to pay for repairs. It seems to me, I'm just speaking for myself, that that moved some but not all of the claims. There certainly were some claims that directly asked them to notify and pay for the repairs. So that part of the case is clearly gone. But there remains a request for restitution and injunction and fees and costs and so forth. So I guess the shape of the case has changed considerably since the district court ruled. Why shouldn't we send it back to the district court for reconsideration in light of the new issues? Because the claims now are narrowed to ones that perhaps are more class-ish, if I could use that term, in that it's a sort of a restitution is kind of how much money did you make from selling this defective car to a lot of people, which really is not an individualized determination. So the game has changed. So why shouldn't we just send it back to the district court to take another look? I agree that the nature of the damages and restitutionary theory at this point simplifies things, particularly when it comes to damages, Your Honor. That being said, the district court's reasoning with regard to materiality, for example, eliminated the ability to certify a plaintiff's CLRA claim. And so without guidance from this panel, that claim would be unavailable to plaintiffs. And that claim provides additional remedies. It provides a right to a jury trial, among other things. Well, to be sure, the district court's reasoning seemed contradictory to me. Again, just speaking for myself, because on the one hand, the claim was considered common, but then not common, depending on which part of the rule the court was looking at. Your Honor, I would agree with that. Just to briefly move back one step to your question about why not remand at this point, I'm also somewhat skeptical that the district court's reasoning with regard to the nature of the proof that's required of the plaintiff's claim will actually repeat itself if it's not addressed by this panel. I'm not sure the district court quite understood the nature of a design defect case. It's sort of the fundamental problem. But can I go back to mootness for a second? Absolutely. So I don't know to what degree the parties have actually litigated mootness, if at all, in the district court, but there are exceptions to mootness. And one of them is if the plaintiff defendant takes action to moot the case, they can always change that action and the case wouldn't be moot. So have those arguments been made, the exceptions to mootness, or are we supposed to just accept that Ford has now solved a major part of the problem? So in terms of the chronology, Ford did not initiate the customer satisfaction program until after the district court's ruling on both class certification and reconsideration of that ruling. So there's been no opportunity to argue mootness before the district court. Ford did move to dismiss this appeal, and so the issue was litigated at that point. The argument was denied without prejudice to re-raising here. In neither event did plaintiff argue that this was an instance of the case not being moot for capable repetition or some other exception to mootness. What we're more focused on is the fact that there's still meaningful relief that the district court can provide. Right. There's some relief that you sought that has been given, because one of the issues in the complaint was, please give notice to everyone and pay for the repairs. And it sounds like everybody agrees that they've now given notice, and I don't, you know, maybe it's defective or it isn't, so that's I guess an issue, but they've given notice and they're relief is gone. I don't know whether that's mootness or it's just that request for relief has been satisfying, but there are a number of remaining claims for other things. You agree, though, that claim's gone? I would agree. I mean, I'm trying to state it so that it's, I'm not saying it's moot in any way, no, it's not moot, no, but in any event, it's gone. Call it moot or call it whatever you want to. Right. Right? Presumably so, Your Honor. I mean, we have no intention at this point of continuing to give notice to the class, presuming that that notice has been delivered. Right. But you still have the restitution claims and injunctive relief and other things. There's restitution under the UCL, Your Honor, and then there's also a pretty related claim under the CLRA, which allows for actual damages. So those are your two viable claims in your mind at this point? Correct. So what is your measure of actual damages? So when the district court's decision came down, the parties were in the midst of discovery. At that point, plaintiffs had propounded discovery requests that went to the revenues and profits that Ford received from selling and leasing these vehicles. That's sort of the restitution claim? Right. Okay. So what's the measure of, what else happened that would be, for which the class might be entitled to compensatory damages? So for example, if a class member purchased their vehicle from a private party rather than from Ford, presumably Ford would not have accrued any money from the class member. Restitution would not be a form of relief that that class member could obtain for purposes of the purchase price. But they couldn't be a member of the class. Your Honor, I would disagree with that. Plaintiff's theory is that had Ford disclosed this defect, it would have, because it's such a serious defect, it's caused 170 accidents at this point. News organizations, consumer rights organizations, it would have become common knowledge that this defect existed and that a company like Ford was nonetheless keeping the car on the market. And so we believe those sorts of people would have received notice and would properly be included in the class. Well, how did you define the class? That's what I'm looking at. It's page six of the complaint, which is, I'm not having a good time finding the ER page, but all persons in California who own or lease a 2005 to 2007 Ford Freestyle and all persons in California who previously owned or leased, same thing. So they don't have to, you're not defining the class as someone who's purchased from Ford. That would be correct, Your Honor. I mean, the nature of selling vehicles is most people, certainly everyone who buys the vehicle knew, went to a Ford dealership, had the opportunity to be warned about the problem. Doesn't that cut against your desire for class certification? Because it would require a lot of individualized determinations of when you bought this, from whom you bought it, how long did you own it, did it exhibit this problem or not exhibit this problem? Isn't that problematic for you? Well, let me answer it this way. As I was saying, most people who bought it, or I think everyone who bought it knew, went to a Ford dealership. Many people who bought it used went to a Ford dealership, including the plaintiff in this case. But you didn't limit the class definition to those who bought from Ford, which would make it kind of easy from your perspective to define it as a common issue. That's right. So for that remaining group of people, it was probably the smallest of the three groups, what you have is a question of causation, fundamentally, and that goes back to the issue of materiality. So the California Supreme Court's made this point several times, where you have a material omission, causation can be presumed for everyone who engaged in the transaction. And so, you know, in this regard, you have, as I said, a very serious defect, one that's caused accidents. It's caused thousands of consumer complaints to the government and to Ford. And so I think given the jurisprudence on this point from the California courts, materiality allows an inference to be drawn as to causation. Or you could do it by subclasses. I mean, I don't know if you got that far with... We didn't get that far. I think that theoretically, at least, that could be an option as well. I think I'm at a point where I can pause and perhaps reserve the rest of my time for rebuttal. Thank you. Thank you. May it please the court, my name is John Thomas, I represent Ford Motor Company. First, I'd like to address this briefly, subclassing, there's only one plaintiff. Each subclass would need a class representative. They don't have any class representatives other than the plaintiff, which is significant, by the way, on the issue of restitution. And I'd like to respond to Judge Graber's question about why not send it back, because restitution is the only form of damages at issue now. First of all, if you send it back, all of the reasons that the trial judge gave, which I'll address, for denying class certification in the first place would still apply, because... Speaking only for myself, some of the district court's reasoning seemed incorrect to me. For example, materiality would appear to be a question common to the class. And also, the district court says, well, there are questions common to the class, but yet when we get over to this other part of the case, I'm going to view those as individual questions. So there's some defects, from my perspective, in the district court's reasoning. But even if we send it back, either with or without correcting the district court's analysis, it just seems to me that the case has changed because of the nature of the claims that went away, and the nature of the remaining claims. It didn't simplify matters, though, and I want to address all of those points, because all of those are important. But first let me address the issue of restitution, because restitution as a practical matter is gone from this case. The measure of restitution, particularly in this case, is not how much profit Ford made from selling the vehicle. The California Supreme Court in Kwikset reaffirmed the principle that restitution requires proof of two things, that the plaintiff lost money, and second, that the defendant acquired it. Now California law allows for tracing. It doesn't have to be a direct benefit from the plaintiff to the defendant, but there has to be some evidence to establish what the plaintiff lost, and evidence tracing that. We're not at the evidence stage yet. I beg to disagree. The plaintiffs, the stage at which the plaintiffs were required to identify their expert witnesses has come, has expired. They identified no expert witnesses whatsoever on damages. They were not required to disclose the substance of any testimony, only the topics, the general topics, and they disclosed no experts. The designation of experts, merits experts, is in the record. It's... And so why is that fatal to class certification? How does that... It simply means that the issue of restitution as a practical matter is not in the case because the plaintiff in this case bought her vehicle used from a Ford dealer. There's no evidence whatsoever, plaintiffs presented no evidence in support of class certification, no evidence, have not even sought discovery with respect to whether Ford profited in any way from the sale of a used vehicle. Second, they presented neither in support of class certification nor in their designation of expert witnesses did they identify any experts who could testify as to the proper measure of restitution. And the reason for that is quite clear because the relief that they sought repeatedly and repeatedly again and again and again throughout this litigation was reimbursement for repairs. It was only after Ford actually agreed to reimburse for repairs that they suddenly decided that they needed to focus on restitution. Well, it's been in the complaint. Yes, it was in the complaint. It's right there. Yes. And why do they need an expert to testify about damages? We're talking about restitution and a measure of restitution is not the profits. They'd have to come up with a class-wide measure to prove how much each plaintiff lost and how much of that was acquired by Ford. And the plaintiff in this case... You mean you could do that without an expert witness, correct? No. No, not really. I mean, there's no way to trace the money back. The plaintiff in this case bought a used vehicle from what happened to be a Ford dealer. But there's no evidence and no suggestion that Ford profited from that. And so she either has no claim for restitution, in which case she's not a typical member of the class, or her claim for restitution involves some complicated tracing of profits on a used car sale back to Ford, which would require expert testimony. Well, you know, the complaint, the second claim, describes restitution differently than you have. And I have to say I'm not at all familiar with California law, so I'm not certain where the right answer lies. But the way it's described in the complaint, it would be susceptible of class-wide adjudication, because the request is for restitution of all revenue accruing to Ford because of its unlawful, unfair, and fraudulent practices. And so, you know, if that's the measure, then it seems quite susceptible of class treatment. And, in fact, why not? If you're looking at what Ford made in terms of its profits on this vehicle versus what any individual lost. So do we need to understand California law? Is that where we need to go with this? Yes, and I'll quote from the California Supreme Court's decision in Quick Set, 51 Cal 4, 310 at page 336, quote, a restitution order against a defendant thus requires both that money or property have been lost by a plaintiff on the one hand, and that it had been acquired by a defendant on the other. I don't think that's... Well, when it's lost, you know, this kind of folds back into the question of materiality, because I understood there to be some presumption that when you buy a defective product, a design defective product, you're deemed to have been harmed, because you wouldn't have bought a defective where there's a hidden defect. So how does that match up, if at all, with the requirement that a plaintiff have lost something in order to obtain restitution? Well, first of all, there's a difference between damages, assuming that the plaintiff has a cause of action for failure to disclose a defect, as to which there's a substantial question under California law. They would either have a claim for damages under the CLRA, which arguably would include diminution of the value of the vehicle attributable to the defect. Restitution, however, is a completely different measure of damages. Now, the diminution in value claim, although the plaintiff may still be pursuing it, I don't know, is gone because four is effectively agreed to fix the defect, which leaves them with restitution. In either event, neither of those claims, neither diminution in value nor any form of restitution, are in the case, because the time for them to disclose experts to identify that has passed, and they did not. Before my time is up, I need to address this issue of materiality, because I would respectfully disagree with Your Honor that materiality is a common question, and in fact, the district court was entirely correct, did not abuse its discretion in determining that in this case, materiality is not a common question. Because of her deposition testimony? Well, it's not just her deposition testimony, but true, first of all, her deposition testimony is that she used this vehicle for two months, even though it was supposedly displaying the surging phenomena every day. She never had any concern for her safety until two months later, as the condition got progressively worse and worse and worse. Finally, when it got so bad and she thought there was some safety issue, she finally took it in. Then, when it came time for her to buy a new vehicle, she bought a Toyota Camry, knowing that there were allegations of sudden acceleration at very dangerous highway speeds in those vehicles, and did no research, essentially, research into whether those allegations had any merit. In addition, we had expert testimony in this case establishing- So you're excused from dealing with your defective vehicle because she bought another defective vehicle from somebody else? No, it's simply, first, Your Honor, there's no vehicle being sold today that does not have the potential for a defect to occur. In fact, as we speak here in the courtroom today- Right, so why does it matter that she bought another vehicle? If they're all defective, why does that matter? It simply demonstrates, well, because it doesn't matter. I mean, that's my point. If she had declined to buy this- You brought it up as being important. So why is it important? It's important because different people would view the potential for this to occur different ways. She demonstrated that she was not concerned enough about the potential for sudden acceleration in a Toyota to refuse to buy the vehicle. A jury could certainly infer from that that she would not have been sufficiently concerned about the relatively minor issue in this case to decline to buy this vehicle because of that potential for that minor issue. Yeah, but the nature of the claim, I think this is where the district court went astray, is that Ford knew that the allegation is that Ford knew there was this defect long before the public knew there was this defect. And I think I don't have those cases in front of me, although I actually do. I think they're being settled right now, so we're not doing anything on them. The Toyota case was the same thing, was that Toyota knew, and yet they sold the product without disclosing that there was this problem. Isn't that the nature of the design defect? So it's not what she did or wouldn't do or whether any individual, what they knew when, it's that there was a defect, Ford knew, and they didn't disclose. No, the CLRA requires proof of actual reliance, which requires proof that. But that's presumed under these kinds of circumstances where there's a failure to disclose. Well, no, that assumes that materiality is a common question, but her own testimony establishes. Well, I am speaking by myself. I don't think we looked at her individual things. I think that's irrelevant because materiality is an objective question under California law. There are five decisions of the California Court of Appeal holding that materiality is not always a common question, including NRA Vioxx involving safety claims. I read that case, and I thought it was very distinguishable from the facts here. I can't remember in detail since I've read 40 others since then. It's not distinguishable from this case. The case involved a subset of people who would have concluded that the benefits of a cardiovascular event in the class in this case, as the plaintiff's own testimony shows, and as the expert testimony shows, is there are a subset of people in this class, unidentifiable, but a subset of people. Vioxx was a different situation because of the role of the intermediary physician or insurance group who prescribed Vioxx for the individual person or otherwise authorized Vioxx for the individual person who had various characteristics which might or might not create a particular impact of Vioxx on them. So that was, there was like, it was very different from the situation here of just direct selling a product that was, you know, that acted the same way. It had the same design defect. Well, I respectfully disagree. I mean, the issue in NRA Vioxx may have been whether the physician relied, but the fact that physicians would have reached different conclusions is really indistinguishable from this case, but be that as it may, if NRA Vioxx was the only decision of the to reach that conclusion, then maybe there might be some arguable distinction there, but it's not. There are four other decisions, all of which hold that materiality under common law is not a common question where reasonable people can reach different conclusions, and none of them involve an intermediary. There is also Tucker versus Pacific Bell, Fairbanks versus Farmers New World, Davis Miller versus... That's the, you look to a reasonable consumer. Is that what you're saying? Yes. That's the standard. See, the issue here is what, it's an objective standard, but there are circumstances, and this is one of them, where reasonable people can reach different conclusions depending upon the weight they put on the value of the product and the risks associated with the product. You can't buy a vehicle, you can't buy a product that does not present some risk, and people value, people put different emphases on those risks, and that's why the Ford would argue and would be entitled to argue to the jury that her own testimony and her own actions... Is it not material to her? Showed it was not material to her, that she would not have relied on it, and she would have purchased the vehicle anyway, and therefore she cannot recover. Ford has the same right to make that same showing with respect to all of the class members. If she, in fact, is typical of the class as they claim, then there are going to be so unimportant that they drive the vehicle for months, and they buy another vehicle that's alleged to be even more dangerous. Is this case right now mainly about fees? Because it seems to me that what's really going to be at stake here is whether Ford's program resulted from this litigation such that plaintiff's counsel is entitled to fees. I know that's a cynical view, but I claim it as my own. Well, I agree 100% with that, Your Honor. Well, have there been any discussions about that? It appears to me that the program did result from this litigation. Well, no. They're a catalyst for this. Is that where this is headed? No, the National Highway Traffic Safety Administration opened its investigation. As far as I know, so far they haven't even made a claim for catalyst fees. That's something that we can address back in the district court if this court affirms. But I agree 100% that this whole thing is about fees. That isn't necessarily bad. I mean, this is, from my perspective, a really serious problem that was uncovered here and dealt with. And if they can take credit for uncovering the problem, they're free to go back to the Except we know from the documents that Ford itself knew about the problem before anybody else. And Ford itself reported it to the highway. Yes, that's true. But the evidence also shows that Ford learned of this problem long after the people in the class bought the vehicle. And I should address. I'm not sure that's not something that is open to be litigated. Well, either it's clear that Ford learned of this after everybody bought the vehicle or else, if you accept their theory of the case, for the knowledge about the problem varied over time, which also supports the district court's decision to deny classification. I should respond to this idea that simply because Ford knew of a defect that's arguably related to safety, that there's some obligation to disclose all such defects. California law is absolutely clear that unless there is an unreasonable risk to safety, there is no obligation to disclose defects, even known that the issue that's supposed to be litigated, whether there was an obligation to disclose is one of the issues. Well, it's one of the issues in this case, one of the common issues in this case. No, that is whether it's a serious risk to safety. How many accidents? How bad were the accidents? Those are common questions. It's not really because it depends on which design of the vehicle you're talking about, because the rates, that's another point that I didn't have a chance to get into. But there's the fundamental basis for the district court's holding is that there was no common defect in this case, because the plaintiffs are now talking about this idle flare, idle control system defect as if that's the only thing that was ever at issue in this case. If you go back and look at their motion originally, it was much broader than that. They did not even mention idle control system. They mentioned sludge in their motion for class. They're only in passing. They have essentially changed their entire theory of this case between the time they filed their motion for class third and now on appeal. Well, it's in the complaint, though. The very thing that is talking about that we're talking about today is right there in the complaint. So why is this allegedly a new invention? It's not. It's not a new invention. It's completely different from their motion for class cert. In fact, you'll see when we responded to their motion for class cert, we said we thought all along that this issue that we were litigating in this case was this idle control speed theory that was being investigated by NHTSA and that was alleged in your complaint. And yet their motion for class certification mentioned all kinds of things other than this idle speed control issue. Except the district court's decision denying certification clearly understood the claim to be exactly the same as the one we're now talking about. I'm not sure because the district court went through and mentioned. Well, at the beginning of the very first couple of pages, it said here's the problem and it's this idle surge and so on and so forth. So it really hasn't moved to my way of thinking. I'm not sure where that gets you anyway. Well, because the fundamental basis for the district court's conclusion is that the plaintiffs had not established a common defect. They hadn't even in their class certification motion. They didn't even define a defect. They talked about things like throttles, throttles, throttle control, throttle positioning sensors and the changes to the throttle position sensors, which have nothing to do with this idle speed control system. They were relying on a potpourri of things unrelated to what we thought they were alleging and what the district court thought they were alleging. And if that's what they worked, if that was their theory, they hadn't identified a common defect. And so no one at that point knew what they were really talking about. In fact, we suspected that because they had taken no depositions that maybe they didn't understand the issue. I think in retrospect, they made a strategic decision not to focus in their motion on this one defect because they couldn't establish that Ford knew of this defect or they were afraid they couldn't establish that Ford knew of this particular defect. At the time, any of the class members purchased their vehicles that it's been narrowed by discovery in the meantime. Is that right or no, no, no. Discovery was almost closed and there hasn't been anything new learned in discovery. They knew about the idle speed control issue when they filed their motion. We know nothing. We know nothing new today that we didn't know then, except that Ford has agreed to try to fix it. Have you gotten to the point of doing a pre-trial conference order? We haven't gotten to that stage. It's usually whatever is in the complaint, at some point it gets narrowed and defined like this. These are the issues for trial by the time of the pre-trial conference order. Well, that should have happened at class certification because the trial judge is obligated. If the judge was going to certify a class, he's supposed to specify the issues to be tried on a class basis. Thank you, counsel. You have some rebuttal time remaining. Thank you. I think there are three points to briefly address and I'll try and go in reverse chronological order from what Mr. Thomas did. With respect to this notion that the theory of plaintiff's case changed, it's true that the opening class certification brief was not overly focused on the nature of the defect. The reason for that was after plaintiff filed her initial complaint, Ford showed up at the Rule 26 conference and told the district court, good news, we've figured out the root cause of this problem. In a motion with the district court, Ford repeated that. Ford has identified the root cause of the alleged surging. From plaintiff's perspective, the nature of the defect wasn't the focus at class certification because it wouldn't be the focus at trial. That being said, when Ford came in in opposition and stirred the pot about the nature of the defect, plaintiff gave it her best shot in the first paragraph of the first page of her class certification reply brief, stating the nature of the defect and what symptoms it has the propensity to cause. We talked about that earlier. It's the sludge buildup, the computer server reaction, and its propensity to cause what point of cause surging. Moving briefly to the topic of materiality, the question of whether a reasonable consumer would find a particular fact important is a yes or no question that's not going to vary from person to person. Because it's a reasonable person's standard. It's an objective standard. Exactly. It's a hypothetical person. What would that hypothetical person find important? What effect does the fact that your client, and I'm being a little bit of a devil's advocate here for Ford, but it wasn't material to her so she can't be the class representative, can she? If I could just say something about that. I think that's what Ford's saying. I'm making the argument for them. Sure. I would disagree on the facts and the law. On the facts, plaintiff testified at her deposition in response to Ford's questions that she would not have purchased this vehicle had the defect been disclosed to her. She said the reason for that is because it was a safety defect. She was scared she was going to pin a person between her vehicle and a wall. The district court didn't make a finding that she per se did not care about this or that it wouldn't have mattered to her. The district court merely raised the suggestion that there's some doubt. Which brings me to the point of law. The name plaintiff in a case like this doesn't hold special significance. The question remains what a reasonable person would find important and what would be important to the name plaintiff might bear on that question, it might be probative of it, but it's not determinative. I'll move last to the question of restitution. First of all, it's perfectly okay for damages issues to be individualized. That's not a bar to class certification. Second of all, I would respectfully disagree with Ford's position that it's not okay to seek restitutionary disgorgement under California law. There are a number of California cases, they're cited in the reply brief, I believe, that hold that disgorgement of ill-gotten gains is one of the main reasons for the consumer protection statutes. And then third on that point, we mentioned this briefly during the first go-round, but the CLRA is slightly different from the UCL in that it allows for actual damages. And so... Does it also allow for punitive damages? It does, Your Honor. But you're not seeking punitive damages, I thought. Your Honor, there is a... My recollection at this point, I apologize, I can't say with certainty, my recollection is punitive damages are referenced in the complaint. One of the realities of this litigation is the extent of Ford's knowledge of this defect has become more and more clear as discovery has proceeded. And so while we might not have been focused on punitive damages... I didn't see it in your complaint. I may be misremembering that, and I apologize if that's the case, Your Honor. But in any event, just to finish up that last point, the CLRA does allow for actual damages, which means that there's no requirement that the named plaintiff's money actually flowed directly or indirectly to the manufacturer. If there are any other questions, I'm happy to address them. I don't believe so. Thank you. Thank you.  Okay. Thank you. Okay.
judges: Mahan, Graber, Wardlaw